UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHUNMING WANG,

Petitioner,

v.

BRUCE SCOTT,

Respondent.

CASE NO. 2:26-cv-03473-GJL

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Chunming Wang is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, alleging, among other things, that his continued detention without an individualized bond hearing violates the Due Process Clause of the United States Constitution. Dkt. 1. Respondent to the Petition is Bruce Scott (Warden of NWIPC) and Interested Party the United States of America has also appeared in this action.[1] The Petition has been fully briefed and is ripe for consideration by the Court. Dkts. 1, 7, 9.

[1] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 3.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition **IN PART** and **ORDERS** that Petitioner be provided an individualized bond hearing as set forth in the conclusion below.

## I. FACTUAL BACKGROUND

Petitioner, a 78-year-old native and citizen of China, was initially admitted to the United States in July 2018, as a nonimmigrant visitor. Dkt. 1 at 3; Dkt. 8 at 1. In October 2018, Petitioner applied for Adjustment of Status ("AOS") with United States Citizenship and Immigration Services ("USCIS"). Dkt. 8 at 1. Petitioner subsequently departed the United States and, on January 3, 2020, returned pursuant to an advance parole authorization while his adjustment application remained pending. Dkt. 1 at 3; Dkt. 8 at 1–2. Petitioner thereafter remained in the United States without being detained by immigration officials for approximately five years. Dkt. 1 at 3–4.

### A. Detention and Immigration Proceedings

On May 30, 2025, USCIS denied Petitioner's AOS application. Dkt. 1 at 4; Dkt. 1-2 (Exhibit G); Dkt. 8 at 2. Shortly thereafter, on June 2, 2025, immigration officials detained Petitioner and placed him in the Federal Detention Facility in Honolulu, Hawaii ("FDC Honolulu"). Dkt. 1 at 4; Dkt. 8 at 2. On June 4, 2025, Petitioner was served with a Notice to Appear and placed in removal proceedings. Dkt. 8 at 2.

On June 3, 2026, an Immigration Judge ("IJ") denied Petitioner's applications for relief from removal and granted voluntary departure. Dkt. 1 at 5; Dkt. 1-2 (Exhibit E); Dkt. 8 at 2. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on July 1, 2026, and that appeal remains pending. Dkt. 1 at 5; Dkt. 1-2 (Exhibit F); Dkt. 8 at 2.

**B. Prior Habeas Proceedings**

Petitioner previously sought habeas relief in the United States District Court for the District of Hawaii, challenging his classification as an arriving alien and the resulting statutory basis for his detention, including an IJ's determination that he lacked jurisdiction to grant bond. *Wang v. Derr*, No. 1:25-cv-00231-JAO-RT (D. Haw. filed Jun. 2, 2025); Dkt. 1 at 1–2; Dkt. 8 at 2.[2]

**C. Circumstances of Current Detention**

Petitioner alleges that he suffers from significant medical conditions, including a brain tumor believed to be a meningioma, for which he previously underwent Gamma Knife treatment and continues to require periodic brain MRI monitoring and neurological care. Dkt. 1 at 2–3. Petitioner further alleges that he has not received the medical evaluation and treatment he requires while in immigration detention. *Id.* at 3. On July 23, 2026, Petitioner was transferred from FDC Honolulu to the NWIPC for medical care. Dkt. 1 at 2; Dkt. 8 at 2. Petitioner remains detained at NWIPC, having been continuously detained by immigration authorities since June 2, 2025, a period of approximately sixteen months.

## II. PROCEDURAL BACKGROUND

Petitioner filed his Petition and supporting evidence on September 16, 2026. Dkt. 1; Dkt. 1-2. Respondent filed a Return and supporting evidence on October 1, 2026. Dkt. 7; Dkt. 8; Thereafter, Petitioner filed a timely Traverse. Dkt. 9.

//

//

[2] Although the Petition indicates that Petitioner's appeal of the district court's decision remains pending, Dkt. 1 at 2, the Ninth Circuit docket reflects that the appeal was dismissed for failure to timely file an opening brief. *Wang v. Derr*, No. 25-4492, Dkt. 7 (9th Cir. Dec. 10, 2025).

## III. HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## IV. DISCUSSION

Although organized into four counts for relief, Petitioner principally raises two due process challenges to his immigration detention. Dkt. 1 at 13–20. First, Petitioner alleges that his detention on June 2, 2025, occurring several years after his release on advanced parole, occurred without constitutionally adequate individualized process in violation of the Fifth Amendment. *Id.* at 13–15. Second, Petitioner alleges that, in any case, his now-prolonged mandatory detention without a meaningful individualized custody determination violates due process. *Id.* at 15–20. As relief, Petitioner requests a constitutionally adequate bond hearing before a neutral decisionmaker at which the Government must justify his continued detention based on his individualized circumstances, or, alternatively, immediate release under appropriate conditions of supervision. *Id.* at 21.

Respondent argues that Petitioner's challenge to the process afforded at the time of his re-detention is barred by the abuse of the writ doctrine because he could have raised that claim in his prior habeas petition challenging the statutory basis for his detention. Dkt. 7 at 6–7. Respondent further contends that Petitioner was not constitutionally entitled to a pre-deprivation

hearing under the *Mathews* framework, *id.* at 7–10, and that his detention has not become unreasonably prolonged so as to require a bond hearing under the *Banda* framework, *id.* at 10–12.

As a threshold matter, the Court finds that Petitioner's *constitutional* challenge to the process afforded contemporaneously with his re-detention was neither raised nor resolved in his prior habeas proceeding challenging the *statutory basis* for his detention. Furthermore, it appears the factual basis of Petitioner's first claim that he was not provided constitutionally adequate process in connection with his initial detention decision continued to develop in the weeks following the final resolution of his first habeas proceedings. *See Wang*, No. 1:25-cv-00231-JAO-RT, Dkt. 46 (amended petition dismissed on July 16, 2025, just six weeks after detention decision). Accordingly, Petitioner's first claim for relief is not barred by the abuse of the writ doctrine. *See Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (the abuse of the writ doctrine "generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition").

Nevertheless, the Court finds that Petitioner's allegations concerning what process he was constitutionally owed but allegedly denied contemporaneously with his re-detention are not sufficiently developed on the present record to permit resolution of that claim. Rather than require additional submissions or clarification on his first claim, however, the Court grants habeas relief on Petitioner's second claim, finding that Petitioner's continued detention without an individualized custody determination has become unreasonably prolonged under the *Banda* framework.

Accordingly, the Court **GRANTS** the Petition (Dkt. 1) **IN PART** and **ORDERS** Respondent to provide Petitioner a constitutionally adequate bond hearing as set forth in the conclusion below.

**A. Applicable Law**

Title 8 of the United States Code §§ 1225, 1226, and 1231 governs immigration detention. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Section 1225 applies to "applicants for admission"—noncitizens[3] who "arrive[ ] in the United States" or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). The *Jennings* Court found that Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*

Under the mandatory detention scheme, the only statutorily provided opportunity for a noncitizen to be released pending removal is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3. The statute does not impose "any limit on the length of detention." *Jennings*, 583 U.S. at 296–301. Nevertheless, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1168 (W.D. Wash. 2019) (cleaned up).

---

[3] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

Neither the Supreme Court nor the Ninth Circuit have settled on a test for assessing the constitutionality of prolonged mandatory detention. *Id.* Courts in this District have adopted the "*Banda* test" to assess when continued mandatory detention, without a bond hearing, violates due process. Courts applying *Banda* consider the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceeding caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 853–59 (D. Minn. 2019)).

**B. Applying the *Banda* Test**

1. <u>Total Length of Detention</u>

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118 (collecting cases granting bond hearings after nine, ten, sixteen, and nineteen months in detention). The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, No. 2:22-cv-0303-LK, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022).

In the wake of *Banda*, courts in the Western District of Washington have considered a range of periods that favor the detainee. *Ashemuke v. ICE Field Off. Dir.*, No. 2:23-cv-1592-RSL, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024) (eleven months); *Murillo-Chavez*, 2022 WL 16555994, at *5 (nineteen months); *see also Populus-Revuelta v. Scott*, 2:26-cv-

00636-RAJ, 2026 WL 1067317, at *4 (W.D. Wash. Apr. 20, 2026) (applying the related *Martinez* test and finding duration of detention factor begins to tilt in favor of noncitizens subject to mandatory detention without a bond hearing for six months or longer); *Odimara v. Bostock*, 2:24-cv-01412-MJP-TLF, 2025 WL 1490395, at *5 (W.D. Wash. Mar. 27, 2025), *report and recommendation adopted*, 2025 WL 1489705 (W.D. Wash. May 23, 2025) (same).

Here, Petitioner has been detained by immigration authorities since June 2, 2025. Dkt. 1-2 (Exhibits B and C); Dkt. 8. Thus, at the time he filed his Petition, Petitioner had been detained for approximately fifteen-and-a-half months, and his immigration detention has now extended to approximately sixteen-and-a-half months. Dkt. 1 (filed September 16, 2026). As such, the first factor weighs strongly in favor of Petitioner.

2. <u>Likely Duration of Future Detention</u>

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal A*., 358 F. Supp. at 859). In *Banda*, for example, the Court noted that the petitioner had recently filed an appeal of a removal order with the BIA. *Id.* As the court explained, if the BIA were to affirm the removal order, the petitioner could seek review in the Ninth Circuit. *Id.* That process, the court found, might "take up to two years or longer." *Id.* (citation omitted). Thus, the *Band*a court found that the factor favored granting the petitioner a bond hearing. *Id*.

As Respondent acknowledges, Petitioner's removal proceedings are currently pending appeal. Dkt. 7 at 11. *Id.* It is therefore likely that Petitioner will face additional time in custody. *See Garcia Puron v. Hernandez*, No. 2:26-CV-01428-TLF, 2026 WL 1660337, at *4 (W.D. Wash. June 9, 2026) (recently estimating that the petition for review process can take up to two

years or longer to reach a final determination). The Court therefore finds this second *Banda* factor weighs in favor of Petitioner.

3. Conditions of Detention

Next, the Court considers the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted).

The conditions of Petitioner's immigration detention weigh in his favor. It is undisputed that Petitioner suffers from serious medical conditions requiring specialized medical care. Dkt. 1; Dkt. 7 at 11. Indeed, during Petitioner's prior habeas proceeding, the District Court for the District of Hawaii acknowledged Petitioner's uncontested allegations concerning the conditions of his confinement, including that he had not been scheduled for necessary medical procedures and had been denied distilled water and appropriate sanitary supplies for his CPAP equipment. *See Wang*, No. 1:25-cv-00231-JAO-RT, Dkt. 46 at 4 n. 3. In its July 16, 2025, order, that court expressly implored immigration officials to address those conditions. *Id.*

Respondent acknowledges that Petitioner was subsequently transferred to NWIPC for medical care on July 23, 2026, more than a year later. Dkt. 8 at 2. Although the record does not establish whether the aforementioned conditions persisted throughout Petitioner's detention or have since been remedied, the Court remains concerned by the conditions identified in his prior proceeding, particularly given Petitioner's advanced age and serious medical needs. That immigration authorities subsequently transferred Petitioner to NWIPC for medical care does not, without more, resolve those concerns. This is particularly true in light of this District's prior recognition of the difficult conditions of confinement at NWIPC, noting that the conditions are "similar . . . to those in many prisons and jails." *Maliwat v. Scott*, No. 2:25-cv-00788-TMC, 2025 WL 2256711, at *5–6 (W.D. Wash. Aug. 7, 2025) (considering evidence and allegations that

NWIPC suffers from understaffing, irregular and nutritionally lacking meals, occasional discolored drinking water, and uncontrolled incidents of violence); *Rahman v. Garland*, No. 2:24-cv-02132-JHC-TLF, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom.; Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1919252 (W.D. Wash. July 11, 2025) (similar and collecting cases).

Thus, the Court finds the third *Banda* factor strongly favors Petitioner.

4. Delays in Removal Proceedings (Petitioner)

The fourth factor considers the nature and extent of any delays in the removal proceedings caused by Petitioner. Noncitizens are "entitled to raise legitimate defenses to removal . . . and such challenges to [their] removal cannot undermine [a] claim that detention has become unreasonable." *Martinez v. Clark*, No. 2:18-cv-1669-RAJ, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of [their] incarceration." *Id.*

Here, Respondent asserts there is no indication any delay has been caused by Petitioner. Dkt. 7 at 11. The Court agrees and finds the fourth *Banda* factor favors Petitioner.

5. Delays in Removal Proceedings (Government)

The fifth *Banda* factor considers delays attributable to the Government. "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable…Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

As with Petitioner, there is no evidence to suggest the Government has engaged in deliberate delay tactics. Nevertheless, courts have found this factor weighs in favor of the petitioner even when delays are not the result of an intentional action on behalf of the Government. *See Martinez*, 2019 WL 5968089, at *10; *Chekhovskii v. Scott*, No. 2:25-CV-02550-TLF, 2026 WL 353265, at *5 (W.D. Wash. Feb. 9, 2026) (collecting cases). For example, delays stemming from the "BIA's and Ninth Circuit's crowded dockets," are attributable to the Government. *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 931 (W.D. Wash. 2020).

Here, Petitioner's appeal of his removal order has been pending before the BIA since July 2026, and an unfavorable decision on that appeal may be subject to further delay in seeking review from the Ninth Circuit. Thus, the Court finds the fifth factor likewise favors Petitioner.

6. Likelihood of Final Order of Removal

Under the final *Banda* factor, the Court considers the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). Here, the Court has been presented with evidence that a removal order has issued and is pending appeal to the BIA. However, the Court does not possess sufficient information regarding the nature or likely success of any challenge to Petitioner's removal order. Thus, at this juncture, the Court is unable to determine whether Petitioner will ultimately prevail.

Accordingly, the Court concludes the sixth *Banda* factor weighs neutrally on the legality of Petitioner's continued detention without a bond hearing.

7. Weighing the Factors

In sum, five of the six *Banda* factors weigh in favor of granting Petitioner a bond hearing, and one of the factors is neutral. Notably, the most important factor—the length of detention—favors Petitioner and the conditions of his confinement also weigh strongly in his favor. *See Banda*, 385 F. Supp. 3d at 1118. Since five of the six *Banda* factors favor Petitioner and none

favor Respondent, the Court concludes that the *Banda* test as a whole favors Petitioner, and that his "continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide him with a bond hearing." *Id.* at 1120.

## V. REMEDY

Having found that Petitioner's continued detention has become unreasonable, the Court must now consider the appropriate relief. The remedy for prolonged detention at this procedural posture is a bond hearing, not release. *L.B.O.M. v. Hermosillo*, No. 2:25-CV-02695-GJL, 2026 WL 266068, at *6 (W.D. Wash. Feb. 2, 2026) (collecting cases). In particular, the Petitioner is entitled to an individualized bond hearing that comports with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (clarifying that "the government should be held to a clear and convincing evidence standard of proof" and requiring a contemporaneous record of the proceedings). Accordingly, the Court issues a conditional writ in this case requiring the provision of a prompt individualized bond hearing as set forth in the conclusion below.

## VI. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** the Petition (Dkt. 1) **IN PART** and **ORDERS** as follows:

(1) Petitioner Chunming Wang's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment;

(2) Respondent **SHALL** provide Petitioner an individualized bond hearing, on adequate notice to Petitioner and his appropriate counsel, before an Immigration Judge **within fourteen days of this Order** unless the hearing is continued at the Petitioner's request. The Government **SHALL** bear the burden of proof by clear and convincing evidence that Petitioner poses a risk of flight, and the Government **SHALL** create a neutral contemporaneous record of the proceeding;

(3) If a bond hearing is not provided within fourteen days of the date of this Order, or within a period of continuance requested by Petitioner, Respondent **SHALL release** Petitioner subject to reasonable conditions of supervised release **no later than the fifteenth day after the date of this**

**Order or the day following a period of continuance requested by Petitioner**;

(4) Respondent **SHALL file** a declaration with the Court confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's release or his request for a continuance by **November 6, 2026**; and

(5) If the bond hearing is continued at Petitioner's request, Respondent **SHALL file** a supplemental declaration confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming Petitioner's release **within two days of the date of the continuance**.

Dated this 21st day of October, 2026.

Grady J. Leupold
United States Magistrate Judge